## CHICAGO, INDIANAPOLIS & LOUISVILLE RAIL-WAY COMPANY ET AL. *v.* UNITED STATES ET AL.

APPEAL FROM THE DISTRICT COURT OF THE UNITED STATES FOR THE DISTRICT OF INDIANA.

No. 150.   Argued January 19, 1926.—Decided March 1, 1926.

1. An order of the Interstate Commerce Commission requiring several carriers to remove discrimination against another carrier resulting from their refusal to make switching arrangements with it such as exist among themselves, does not require them to extend this service to the other but leaves them free to remove the discrimination by any appropriate action.   P. 292.

2. The fact that a complaining carrier has physical connection with only one of several other carriers is not a reason why the Commission may not order these to remove unjust discrimination against the complaining carrier, found to result from a reciprocal switching arrangement among the others from which it is excluded.   *Id.*

3. The court can not substitute its judgment for that of the Commission as to the similarity of the circumstances and conditions of carriers charged with unjust discrimination to those of the complaining carrier.   P. 293.

4. Where an electric railroad charged unjust discrimination in its exclusion from a switching arrangement existing among four steam railroads,—*held* that the facts of its being an electric railroad, connected physically with but one of the others, with relatively limited terminal facilities, freight cars, industries on its line, exchange points, and business to exchange, did not constitute, as a matter of law, such difference of circumstances as negatives discrimination.   *Id.*

5. The fact that an order to remove discrimination resulting to a carrier from a traffic interchange arrangement existing among other carriers may, as a practical matter, require them to admit it to a part in business adequately handled by them, does not make the order a taking of property without due process of law.   P. 294.

6. The provision of the Transportation Act, 1920, § 418, Interstate Commerce Act § 15(3), forbidding the Commission to establish any through route, etc., between street electric passenger railways not engaged in the general business of transporting freight in addition to their passenger and express business, and railroads of a different character, does not deprive the Commission of jurisdiction

to order steam railroads to desist from discrimination in switching against a complaining electric railroad, not engaged in general transportation of freight. P. 294.

7. A finding of the Commission that an electric railroad was engaged in the general transportation of freight, *held* conclusive, where the evidence taken before the Commission was not introduced in the court below. P. 295.

Affirmed.

APPEAL from a decree of the District Court denying a preliminary injunction, in a suit by appellant railway companies against the United States, to suspend and set aside an order of the Interstate Commerce Commission. The Commission and an electric railroad, on whose behalf the order was entered, intervened.

*Messrs. C. C. Hine* and *E. S. Ballard,* with whom *Mr. William L. Taylor* was on the brief, for appellants.

An order of the Commission that is contrary to the facts, is contrary to law, and should be set aside. *Interstate Commerce Commission* v. *L. & N. R. Co.,* 227 U. S. 88; *St. Louis, I. M. & S. R. Co.* v. *United States,* 217 Fed. 80; *United States* v. *Louisiana & P. R. Co.,* 234 U. S. 1.

The order is contrary to, and not sustained by, the undisputed facts, because: (a) Unlawful discrimination cannot exist unless there is a physical connection by the carrier alleged to be guilty of the discrimination with the railroad or shipper claiming to be discriminated against, or a service being performed for the railroad or shipper discriminated against through the medium of joint routes or joint rates. Here, three of the appellants do not come in contact and have no physical connection with the South Shore and its shippers, and do not perform any service for them through the medium of joint routes or joint rates. *St. Louis, I. M. & S. R. Co.* v. *United States,* 217 Fed. 80; *St. Louis S. W. R. Co.* v. *United States,* 245 U. S. 136; *Central R. Co. of N. J.* v. *United States,* 257 U. S. 247.

(b) The circumstances and conditions are dissimilar. *United States* v. *Oregon R. R. & Navigation Co.*, 159 Fed. 975; *Seaboard Air Line* v. *United States*, 254 U. S. 57; *Central R. Co. of N. J.* v. *United States*, 257 U. S. 247.

The order deprives these appellants of their property without due process of law, in violation of the Fifth Amendment. *L. & N. R. Co.* v. *Central Stock Yards*, 212 U. S. 132; *C. I. & L. R. Co.* v. *Public Service Commission*, 188 Ind. 334; *Indiana Harbor Belt R. Co.* v. *Public Service Commission*, 187 Ind. 660.

No satisfactory evidence was introduced before the Commission to show that the South Shore is such a common carrier as comes within the provisions of the Interstate Commerce Act. *United States* v. *Village of Hubbard*, 266 U. S. 474; *United States* v. *Abilene & S. R. Co.*, 265 U. S. 274; *Interstate Commerce Commission* v. *L. & N.*, 227 U. S. 88.

*Mr. Blackburn Esterline,* Assistant to the Solicitor General, with whom *Solicitor General Mitchell* was on the brief, for the United States.

*Mr. R. Granville Curry,* with whom *Mr. P. J. Farrell* was on the brief, for the Interstate Commerce Commission.

*Mr. Ernest S. Ballard,* with whom *Messrs. Rush C. Butler, William E. Lamb,* and *James Dale Thom* were on the brief, for Chicago, Lake Shore and South Bend Railway Company.

MR. JUSTICE BRANDEIS delivered the opinion of the Court.

Four steam railroads whose lines enter Michigan City, Indiana, brought this suit against the United States, in the federal district court for that State, to set aside an order of the Interstate Commerce Commission entered.

April 2, 1924. The order directed the steam railroads to remove the unjust discrimination which the Commission found was being practiced against an electric railroad, which also entered that city, by refusal to switch its interstate carload traffic and to make arrangements with it for reciprocal switching. *Chicago, Lake Shore & South Bend Ry. Co. v. Lake Erie & Western R. R. Co.*, 88 I. C. C. 525. The order was assailed on the grounds,—that the facts found did not in law sustain the finding of unjust discrimination; that the order deprives the plaintiffs of their property in violation of the due process clause; and that the electric railroad was not shown to be within the class of carriers entitled to relief against discrimination. The Commission and the electric railroad on whose behalf the order was entered intervened in the suit as defendants. The case was heard before three judges on application for a preliminary injunction, which was denied without opinion. It is here on direct appeal under the Act of October 22, 1913, c. 32, 38 Stat. 208, 220.

The essential facts are these. The Chicago, Lake Shore & South Bend Railway Company, sometimes called the South Shore, is an electric passenger railroad which is engaged also in the general transportation of freight. *Indiana Passenger Fares, etc.*, 69 I. C. C. 180. Its line extends from South Bend, Indiana, to Kensington, a station within the corporate limits of Chicago. At Michigan City it has physical connection with the Lake Erie and Western—a steam railroad which is a part of the New York Central system. The Lake Erie refused to establish through routes and joint rates to or from points on the South Shore, and also refused to establish with it satisfactory interchange switching charges to industries at Michigan City. It had established such switching interchange with the three other steam railroads which enter that city—the Chicago, Indianapolis & Louisville, commonly called the Monon, the Michigan Central and the

Pere Marquette. To remove the alleged discrimination, the South Shore brought against the Lake Erie alone the proceeding reported in *Chicago, Lake Shore & South Bend Ry. Co.* v. *Director General,* 58 I. C. C. 647. By the order there entered the Lake Erie was directed to establish such through routes and joint rates with the South Shore, and was also directed to cease and desist from discriminating by refusing to perform reciprocal switching service with it while performing such switching with the three steam railroads named. The Lake Erie elected to remove the discrimination by entering into such reciprocal switching arrangements with the South Shore.

None of the other three steam railroads had been a party to the proceeding against the Lake Erie. None of them had established through routes or joint rates with the South Shore to points on its line. Each of them refused to enter into an arrangement with it for reciprocal switching. But each of the four steam railroads had an arrangement for reciprocal switching with each of the others. Thus the South Shore still remained at a disadvantage in handling traffic at Michigan City. To remove the discrimination so arising, a second petition was filed, which resulted in the order here assailed. The position of the other steam railroads differed in one respect from the Lake Erie. It alone had a direct physical connection with the South Shore at Michigan City. Cars from the South Shore could not reach either the Michigan Central or the Monon without passing over tracks of the Lake Erie. They could not reach the Pere Marquette without passing over tracks of both the Lake Erie and the Monon.

The South Shore was within the switching district at Michigan City, and through routes and arrangements were already in effect by which traffic from the Monon, the Michigan Central and the Pere Marquette would be delivered there to the South Shore as an industry; and on such traffic the switching charges would be absorbed.

Compare *Missouri Pacific R. R. Co.* v. *Reynolds-Davis Grocery Co.,* 268 U. S. 366. The refusal of the steam railroads complained of relates to interchange traffic with the South Shore as a carrier for shippers on its line. The Commission found that this refusal constituted a discrimination, because each steam railroad rendered a like service for each of the others. The steam railroads contend that the circumstances and conditions in respect of the steam railroads were not similar, and that, hence, there could not in law be unjust discrimination. But the absence of direct physical connection between the South Shore and the three steam railroads other than the Lake Erie is the basis of the main attack upon the validity of the order.

*First.* The steam railroads contend that, in effect, the order directs them to establish through routes and joint rates, or to allow a common use of terminals; that such extensions of service can legally be made only upon a finding that public necessity and convenience require them, Transportation Act, 1920, c. 91, amending Interstate Commerce Act, § 1, par. 21; § 3, par. 4; § 15, pars. 3 and 4, 41 Stat. 456, 478, 479, 485, 486; and that, without making such a finding, the Commission has, under the guise of a discrimination order, compelled them to extend their service. It is argued that, as a matter of law, a carrier cannot be guilty of unjust discrimination unless it is able by its own act to remove the inequality; that where there is no direct physical connection with the railroad alleged to be discriminated against, and no joint service is being rendered by the three steam railroads with the South Shore, there cannot, in law, be unjust discrimination, because the existing inequality can be removed only by the consent of a third party, the intermediate carrier.

The order does not require the steam railroads to extend any service to the South Shore. It leaves them free to

remove the discrimination by any appropriate action. *American Express Co.* v. *Caldwell,* 244 U. S. 617, 624; *United States* v. *Illinois Central R. R. Co.,* 263 U. S. 515, 521. Direct physical connection with the carrier subjected to prejudice is not an essential. *St. Louis Southwestern Ry. Co.* v. *United States,* 245 U. S. 136, 144. Unjust discrimination may exist in law as well as in fact, although the injury is inflicted by a railroad which has no such direct connection. Wherever discrimination is, in fact, practiced, an order to remove it may issue; and the order may extend to every carrier who participates in inflicting the injury. *United States* v. *Pennsylvania R. R. Co.,* 266 U. S. 191, 197–9. There is nothing to the contrary in *Central R. R. Co. of N. J.* v. *United States,* 257 U. S. 247. The relief sought there was denied solely because the Central, although it participated in establishing the through route and joint rate, did not participate in the service which alone was alleged to constitute discrimination. Here each of the steam railroads was an effective instrument of the discrimination complained of.

*Second.* It is contended that the circumstances and conditions under which the interchange switching service was performed by the steam railroads for each other were essentially dissimilar from those under which such service would be performed for the South Shore. As establishing dissimilarity, the steam railroads point to the South Shore's absence of direct physical connection with any of the carriers except the Lake Erie; to the South Shore's relatively limited terminal facilities at Michigan City; to its relatively small number of freight cars; to the relative fewness of industries on its line; to the fact that the steam railroads exchange traffic at many points, while the South Shore will exchange traffic with them only at Michigan City; to the fact that the South Shore will originate relatively little business which can pass to the lines of

the steam railroads, while they originate much which may
pass to the South Shore.   Despite these facts, the Com-
mission found that the circumstances and conditions were
similar.   The court cannot substitute its judgment for
that of the Commission.   *United States* v. *New River Co.,*
265 U. S. 533, 542.   The alleged lack of reciprocity and
the other facts stated do not constitute, as a matter of law,
differentiating circumstances which negative discrimina-
tion.   Compare *Pennsylvania Co.* v. *United States,* 236
U. S. 351, 364; *United States* v. *Illinois Central R. R. Co.,*
263 U. S. 515, 523.

*Third.* It is contended that the order takes the steam
railroads' property without due process of law.   The
argument is that, while in form the order leaves open to
them alternatives, no one would seriously urge that they
can, as a practical matter, comply with the Commission's
order by ceasing to interchange traffic between them-
selves, as that would be contrary to obvious public interest
and necessity; that, therefore, in effect, the order requires
them to permit the South Shore to take a part of the
business which they are handling adequately; that busi-
ness now enjoyed by them is their property, and that the
order, therefore, amounts to taking their property in
violation of the Constitution.   Substantially the same
objection was made and overruled in *Pennsylvania Co.*
v. *United States,* 236 U. S. 351, and *Louisville & Nash-
ville R. R. Co.* v. *United States,* 238 U. S. 1, 20.   Com-
pare *Seaboard Air Line Ry. Co.* v. *United States,* 254
U. S. 57; *United States* v. *Illinois Central R. R. Co.,* 263
U. S. 515, 523; *United States* v. *American Ry. Express
Co.,* 265 U. S. 425, 437–8.

*Fourth.* It is contended that the effect of the Commis-
sion's order is to require the steam railroads to establish
the practice of reciprocal switching with the South Shore,
and to establish rates and charges covering such switch-
ing; that power to issue such an order exists only where

the carrier is "engaged in the general business of transporting freight in addition to" its passenger business, as required by § 418 of Transportation Act, 1920, February 28, 1920, c. 91, §§ 418, 421, 41 Stat. 456, 484, 487–8; and that the Commission was without jurisdiction to enter the order because there is not in the record satisfactory evidence that the South Shore was engaged in the general transportation of freight. See *The Chicago Junction Case,* 264 U. S. 258. Since the decision of this case below, it has been held by this Court that the Commission has power to prevent unjust discrimination practiced by an electric railroad against a steam railroad engaged in interstate commerce, even if the electric line is neither operated as part of a steam railway system nor engaged in the general transportation of freight in addition to its passenger and express business. *United States* v. *Village of Hubbard,* 266 U. S. 474. It is insisted, however, that the limitation contained in § 418 applies, because in this case it is the electric line which is seeking relief. The contention is groundless. Moreover, the Commission found that the South Shore is also engaged in the general transportation of freight. Its finding is necessarily conclusive as the evidence taken before the Commission was not introduced below. *Louisiana & Pine Bluff Ry. Co.* v. *United States,* 257 U. S. 114.

*Affirmed.*

MR. JUSTICE HOLMES took no part in the decision of this case.